UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WILLIAM MONROE MCBRIDE,

Petitioner, Case No. 12-cv-15214

v Honorable Thomas L. Ludington

LLOYD RAPELJE,

Respondent.

______________________________________/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner William Monroe McBride, presently confined at the Muskegon Correctional Facility in Muskegon, Michigan, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is represented by counsel. Petitioner was convicted of five crimes by a jury in the Kent County Circuit Court: (1) possession with intent to deliver 50 grams or more of cocaine, Mich. Comp Laws § 333.7401(2)(a)(iii); (2) possession with intent to deliver marijuana, Mich. Comp Laws § 333.7401(2)(d)(iii); (3) possession of a firearm by a felon, Mich. Comp Laws § 750.224f; (4) possession of a firearm in the commission of a felony (felony-firearm), Mich. Comp Laws § 750.227b; and (5) being a third felony habitual offender, Mich. Comp Laws § 769.11. Petitioner was sentenced to thirteen to forty years imprisonment on the possession with intent to deliver cocaine conviction, three to eight years on the possession with intent to deliver marijuana conviction, four to ten years for the felon in possession of a firearm conviction, and a consecutive two year prison term on the felony-firearm conviction. Petitioner alleges that the evidence was insufficient to sustain his convictions, that his right to confrontation

was violated, and that he was deprived of a fair trial because of prosecutorial misconduct and counsel's ineffectiveness in failing to object to the misconduct. The respondent has filed an answer to the petition, asserting that the claims lack merit. The Court agrees that petitioner's claims are meritless, therefore the petition will be denied.

**I.**

Petitioner was convicted of the above offenses following a jury trial in the Kent County Circuit Court. The following relevant facts, recited by the Michigan Court of Appeals, are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> On January 18, 2007, officers of the Metropolitan Enforcement Team (MET) executed a search warrant at a residence located on Logan Street in Grand Rapids. The police found Sylvia Purnell and Jermaine Jones in the downstairs living area, and three children watching television in an upstairs bedroom. McBride was not present in the home. After securing the premises, the officers searched for contraband. In a small upstairs bedroom, Detective Scott Vogrig observed a light brown backpack on a bed. Inside the backpack, Vogrig discovered two digital scales, chunks of crack cocaine, and a bag of powder cocaine. On a nearby window ledge, Vogrig found a United States Postal Service change of address form bearing McBride's name, dated January 5, 2007. The form stated a former mailing address on Kalamazoo Street in Grand Rapids, but did not display a new address. Also near the bed, Vogrig located two blue "totes" stacked on top of each other. The top tote enclosed a man's shirt wrapped around a plastic bag containing $18,000 in currency. Another plastic bag held "rubber bands and money bands, with denominations on them." Underneath the red shirt, Vogrig found a male bullet-proof vest and additional male clothing. In the second tote, Vogrig came upon a letter addressed to Purnell at the Logan Street address.
>
> Detective Gregory Duffy searched the bedroom's closet. A black duffle bag sitting on the closet floor held men's clothing, a Beretta .40 caliber handgun, and McBride's Mississippi driver's license. Inside the closet, Duffy discovered several bags of marihuana, a box of sandwich bags, and approximately $1500 stuffed into a girl's tennis shoe. Duffy recalled that a second, "Louis Vuitton-type" duffle bag found in the closet contained a smaller amount of marihuana. The closet search also yielded McBride's title to a Buick Regal, and a Sprint bill in McBride's name. Both the title and the Sprint bill identified McBride's address as a Grand Rapids location other than Logan Street.

McBride was eventually arrested in Mississippi and extradited to Michigan. At McBride's trial, Sergeant Dale Young testified as an expert in "drug trafficking." He opined that the Logan Street residence appeared to be a "stash house," which Young defined as, "a typical place where a distributor will keep his contraband, drugs, money, maybe weapons, to hide from police, or somebody that may rob him or her." Young explained that as a "cushion of protection . . . from being found out," drug distributors "don't normally keep their registered address" as the location where they store drug products. As factual support for his conclusion that the Logan premises served as a "stash house," Young cited: (1) the quantity of drugs and money found there, (2) the absence of any paraphernalia used to smoke marihuana or use cocaine, and (3) the presence of typical drug packaging materials.

McBride asserted an alibi defense. Nine witnesses testified that during the months before and after the raid, McBride had spent considerable time in Wisconsin and Mississippi. One alibi witness placed McBride in Mississippi on the same day the police searched the Logan Street house. But a different alibi witness supplied evidence that significantly bolstered the prosecution's case. McBride's sister, Crystal McBride, acknowledged awareness of her brother's friendship with Purnell, and recalled that when her brother arrived in Mississippi in December 2006, he carried a "Louie Vuitton bag" and a black "Burberry bag." Other alibi witnesses confirmed that McBride and Purnell had once been romantically involved.

*People v. McBride*, No. 296938, * 1-2 (Mich. Ct. App. June 28, 2011).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 805 N.W.2d 205 (2011).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Mr. McBride was denied his right to due process of law under the XIV Amendment where his convictions were not supported by sufficient evidence of guilt.

II. Where Mr. McBride's confrontation rights were violated by several out of court statements to investigating narcotics officers, the errors are not harmless beyond a reasonable doubt.

III. Defense counsel rendered ineffective assistance of counsel by failing to object to prosecutorial misconduct and police testimony that McBride was the "target" of the instant investigation.

II.

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per*

*curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford*, 537 U.S. at 24. Therefore, to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87. Finally, in reviewing Petitioner's claims, this Court must remember that under the federal constitution, Petitioner was "entitled to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619 (1953).

III.

A.

Petitioner first contends that there was insufficient evidence to connect him to the narcotics and firearm recovered from the Logan Street address to support his convictions in this case.

The Michigan Court of Appeals rejected Petitioner's claim, concluding that there was sufficient evidence presented that Petitioner constructively possessed the narcotics and the firearm that were recovered from the Logan Street home. *People v. McBride,* Slip. Op. at * 3. In so ruling, the Michigan Court of Appeals noted that:

> None of the trial witnesses testified that McBride actually possessed the drugs or the handgun. Nor does the record evidence substantiate that McBride resided at the home on Logan Street, or exercised any rights of ownership related to the dwelling. But the critical question is not where McBride lived when the police found the contraband, but whether sufficient evidence demonstrated a nexus between McBride and the seized items. Contrary to McBride's argument, ample circumstantial evidence linked him to the drugs and the weapon. The duffle bags found in the bedroom matched Crystal McBride's description of her brother's luggage. The uniquely personal identification documents stored among the drugs, digital scales, plastic bags, currency, and the Beretta give rise to an inference that the bedroom served as a storage space for a drug delivery operation that McBride controlled. Indeed, the officers' recitation of the bedroom's contents comported with Sergeant Young's depiction of a typical "stash house." A reasonable jury could readily conclude that the close proximity between McBride's personal items and the contraband signified that McBride owned the items, and intended to maintain control over them.

*Id.* (internal citation omitted).

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original). Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence at trial to exclude every reasonable hypothesis except that of guilt. *Johnson v. Coyle*, 200 F. 3d 987, 992 (6th Cir. 2000)(internal quotations omitted).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is

whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S. Ct. 2060, 2065 (2012).

Under Michigan law, to convict a defendant of possession with intent to deliver a controlled substance, the prosecution must prove: (1) that the recovered substance is a narcotic; (2) the weight of the substance; (3) that the defendant was not authorized to possess the substance; and (4) that the defendant knowingly possessed the substance with the intent to deliver it. *See People v. McGhee*, 709 N.W.2d 595, 612 (Mich. Ct. App. 2005).

To convict a defendant under Michigan law for possession of a controlled substance, a prosecutor must prove that the defendant exercised control or had the right to exercise control over the controlled substance. *See McFarland v. Yukins,* 356 F. 3d 688, 708 (6th Cir. 2004)(citing *People v. Konrad,* 536 N.W.2d 517 (Mich. 1995))(additional citations omitted). Under Michigan law, a defendant need not have actual physical possession of a controlled substance to be guilty of possessing it. *People v. Wolfe,* 489 N.W.2d 748, 753 (Mich. 1992). Possession of a controlled substance may be actual or constructive. *Id.* "Constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the contraband." *Id.* at 754. Constructive possession of a controlled substance can be proven by circumstantial evidence. *See McGhee,* 709 N.W.2d 595, 612 (2005); *see also U.S. v. Gibbs,* 182 F. 3d 408, 424 (6th Cir. 1999).

A felony-firearm offense requires that the defendant possessed a firearm while committing, or while attempting to commit, a felony offense. *See Parker v. Renico,* 506 F. 3d 444, 448 (6th Cir. 2007). The elements of felon in possession of a firearm in Michigan are: (1) that the defendant was convicted of a felony, (2) that the defendant possessed a firearm, and (3) that at the time of possession, less than three or five years, depending on the underlying felony,

has passed since the defendant had completed his term of incarceration, satisfied all conditions of probation and parole, and paid all fines. *Id.* Under Michigan law, possession of a firearm can be either actual or constructive. *Id.* (citing *People v. Hill*, 446 N.W.2d 140, 143 (Mich. 1989)). Under both federal and Michigan law, "a person has constructive possession if there is proximity to the [weapon] together with indicia of control." *Id.* "Put another way, a defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant." *Parker*, 506 F. 3d at 448, n. 3(quoting *Hill*, 446 N.W. at 143). "As applied, 'reasonable access' is best calibrated to instances where a defendant commits a crime emboldened by a firearm available, but not in hand." *Id.* The Sixth Circuit notes that "[c]onstructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *Id.* at 449 (quoting *United States v. Craven*, 478 F. 2d 1329, 1333 (6th Cir. 1973), *abrogated on other grounds by Scarborough v. United States*, 431 U.S. 563 (1977)).

In the present case, there was sufficient circumstantial evidence presented to establish Petitioner's connection to the bedroom area of the Logan Street address so as to sustain his convictions for possession with intent to deliver cocaine, possession with intent to deliver marijuana, felon in possession of a firearm, and felony-firearm under a constructive possession theory. The discovery of several documents in Petitioner's name in several different locations within the bedroom in close proximity to the narcotics and the firearm was sufficient circumstantial evidence for a rational trier of fact to conclude that Petitioner had the right to control the narcotics and the firearm that were recovered from the bedroom. *See Anderson v. Trombley,* 451 Fed. App'x. 469, 475 (6th Cir. 2011). In addition, there was evidence that

Petitioner had been romantically involved with Sylvia Purnell, who resided at this address, and men's clothing was found in the bedroom near the drugs and firearm. This evidence also established a link between Petitioner and the narcotics and the firearm recovered from the bedroom. *Id.* Moreover, the duffle bags that had been recovered from the bedroom matched Crystal McBride's description of Petitioner's luggage. The firearm and Petitioner's driver's license were recovered from the black duffle bag and some marijuana was recovered from the second "Louis Vuitton-type" duffel bag. Evidence that Petitioner's personal effects had been recovered from the room containing, or in close proximity of, the contraband would also support a finding that Petitioner was in constructive possession of the narcotics and firearm that had been recovered from the bedroom so as to support his convictions. *Id.*

Finally, even if this Court was not convinced that the evidence in this case was sufficient to establish Petitioner's guilt beyond a reasonable doubt, the Court cannot conclude that it was objectively unreasonable for the Michigan Court of Appeals to determine that a rational trier of fact could find that constructive possession of the cocaine, the marijuana, and the firearm had been established beyond a reasonable doubt based upon the evidence introduced at trial. *Anderson*, 451 Fed. App'x at 475. Petitioner is not entitled to habeas relief on his first claim.

B.

Petitioner next contends that the prosecutor elicited testimony in violation of his Sixth Amendment right to confrontation. Petitioner first contends that the prosecutor violated the Confrontation Clause by eliciting testimony from Detective Vogrig and Sergeant Young about the investigation and about Petitioner being the target of the investigation. Petitioner also claims that his right to confrontation was violated by the introduction of statements made by Jermaine Jones to Sergeant Young on the night of the raid.

Respondent contends that Petitioner's first confrontation claim is unexhausted because it was never presented to the state courts. Assuming that Petitioner's first Confrontation Clause claim was not exhausted with the state courts, an unexhausted claim may nonetheless be rejected if it lacks merit. *See Burton v. Bock*, 239 F. Supp. 2d 686, 691 (E.D. Mich. 2002)(citing to 28 U.S.C. § 2254(b)(2); *Cain v. Redman*, 947 F. 2d 817, 820 (6th Cir.1991)). Because Petitioner's claim is without merit, the Court will not dismiss the petition on exhaustion grounds but will instead address and deny the claim on the merits.

Out of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *See Crawford v. Washington*, 541 U.S. 36, 68-69 (2004). However, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id.*, at 59, n. 9; *See also Tennessee v. Street,* 471 U.S. 409, 414 (1985)(defendant's rights under the Confrontation Clause were not violated by introduction of an accomplice's confession for the non-hearsay purpose of rebutting defendant's testimony that his own confession was coercively derived from the accomplice's statement). Indeed, "[I]n some circumstances, out of court statements offered for the limited purpose of explaining why a government investigation was undertaken have been determined not to be hearsay." *United States v. Gibbs*, 506 F. 3d at 486-87 (*quoting United States v. Martin*, 897 F. 2d 1368, 1371 (6th Cir.1990)). Evidence that is provided merely by way of background or is offered only to explain how certain events came to pass or why law enforcement officers took the actions that they did is not offered for the truth of the matter asserted, and thus cannot

trigger a Confrontation Clause violation. *See U.S. v.Warman*, 578 F. 3d 320, 346 (6th Cir. 2009)(*quoting United States v. Cromer*, 389 F.3d 662, 676 (6th Cir. 2004)).

In the present case, the officers' testimony concerning their investigation of Petitioner did not violate the Confrontation Clause because it was not offered to prove the truth of the matter asserted, but was only offered for the non-hearsay purpose of helping the jury to understand the officers' investigation and why they searched the Logan Street address. Neither officer testified about the contents of any out-of-court statements nor identified the source of their information. Indeed, "testimony that does not reveal any specific statement made by a confidential informant (or other nontestifying declarant) and merely provides background information regarding the course of investigation does not violate the Confrontation Clause." *U.S. v. Pugh*, 273 Fed. App'x. 449, 455 (6th Cir. 2008); *See also Cromer,* 389 F.3d at 676-77 (testimony of officer that he "had information" about drug dealing occurred at a particular address was permissible as background information even though the jury could link that address to the defendant); *Gibbs*, 506 F. 3d at 486-87 (agent's testimony that parolee told him that defendant, who was charged with being felon in possession of firearms, had long guns hidden in his bedroom, was not hearsay, but instead was offered as background evidence to show why defendant's bedroom was searched, and was not offered for its truth, since it did not bear on defendant's alleged possession of pistol with which he was charged.). Accordingly, Petitioner is not entitled to habeas relief on this claim.

Petitioner next contends that his right to confrontation was violated by the admission of Jermaine Jones' statements to Sergeant Young the night of the raid. During the prosecutor's examination of Sergeant Young, he elicited testimony that Jones had informed Young that he was visiting from Mississippi, had spent the night on the couch at the Logan Street address, and

that his possessions were inside of a duffel bag located in the living room of the house. Jones also informed Young that he was doing drywall work for Petitioner. Jones also denied any knowledge of the drugs or firearm that had been recovered from the house, claiming that he was just a visitor.

The Michigan Court of Appeals concluded that any error in the admission of Jones' out-of-court statements to Sergeant Young was harmless error:

> We are convinced beyond a reasonable doubt that Young's recitation of Jones's statements did not contribute to the jury's verdict. Jones's statements exculpated Jones, but did not inculpate McBride. Jones did not identify McBride as a drug dealer, and not even a hint emerged from the challenged portion of Young's testimony that McBride owned, controlled, or knew of the bedroom contraband. Rather, Jones's responses to Young's questions distanced Jones from a small amount of cocaine hidden in a location separate and distinct from the contraband found in the bedroom. Notwithstanding this testimony, ample untainted evidence connected McBride to the drugs and gun found in the bedroom. Based on the unrefuted presence of McBride's personal documents among the contraband, we deem the admission of Jones's statements harmless beyond a reasonable doubt.

*McBride,* Slip. Op. at * 8.

Confrontation Clause violations are subject to harmless error review. *See Bulls v. Jones*, 274 F. 3d 329, 334 (6th Cir. 2001). In *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), the U.S. Supreme Court held that for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. In determining whether a Confrontation Clause violation is harmless under *Brecht*, a court should consider the following factors: "(1) the importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross examination otherwise permitted; and (5) the overall

strength of the prosecution's case." *See Jensen v. Romanowski*, 590 F. 3d 373, 379 (6th Cir. 2009)(citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).

In the present case, Petitioner has failed to show that the admission of Jones' hearsay statements had a substantial and injurious effect or influence on the verdict. Jones did not indicate that the cocaine, marijuana, or the firearm belonged to Petitioner, nor did he indicate that Petitioner had even resided in the house. Because Jones' statements did not implicate Petitioner in the possession of the narcotics and firearm, their admission at trial was harmless error, particularly where there was other ample evidence linking Petitioner to the contraband. *See U.S. v. Driver*, 535 F. 3d 424, 428 (6th Cir. 2008). Moreover, when "viewed through the deferential lens of AEDPA, the state court's harmlessness ruling must stand" because based on the record in this case, the Michigan Court of Appeals reasonably rejected any potential error in the admission of Jones's hearsay statements as harmless error. *See Kennedy v. Warren*, 428 Fed. App'x. 517, 522, 523 (6th Cir. 2011). Petitioner is not entitled to habeas relief on his second claim.

C.

Petitioner finally contends that he was deprived of a fair trial because the prosecutor committed misconduct by eliciting testimony from Detective Vogrig that Petitioner had been the target of the investigation and then commenting on this testimony in his closing argument because such testimony was based on hearsay evidence. Alternatively, Petitioner contends that counsel was ineffective for failing to object to the misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir.2004)(*citing Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir.2003)). A prosecutor's improper comments will be held to violate a criminal

defendant's constitutional rights only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(internal quotation omitted). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45. The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir.1997) (*quoting Serra v. Michigan Dep't of Corr*., 4 F.3d 1348, 1355 (6th Cir. 1993)). Finally, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F. 3d 501, 516 (6th Cir. 2006)(*quoting Donnelly*, 416 U.S. at 645). Thus, to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)(*quoting Harrington*, 131 S. Ct., at 786–87). This is particularly so, "because the *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations . . . .'" *Id.* (*quoting Yarborough v. Alvarado*, 541 U.S. at 664).

Petitioner has not shown that the prosecutor committed misconduct by eliciting testimony from Detective Vorgig that Petitioner was the target of the criminal investigation. Prosecutorial misconduct and Confrontation Clause claims "involve distinct legal analyses." *Hicks v. Straub*, 377 F. 3d 538, 556 (6th Cir. 2004). Even assuming that Petitioner confrontation rights were violated by the admission of this evidence, this would still not amount

to prosecutorial misconduct in the absence of a showing of bad faith on the prosecutor's part in asking Detective Vogrig questions about whether Petitioner was the target of the police investigation. *See Frazier v. Cupp*, 394 U.S. 731, 736-737 (1969)(holding that a prosecutor's good or bad faith in expecting a witness to testify is not controlling in determining whether a defendant's right of confrontation, was violated, but finding that, because of the prosecutor's good faith there, no prosecutorial misconduct claim could be shown). Petitioner has presented no evidence that the prosecutor did not ask these questions in good faith.

Moreover, assuming that the prosecutor committed misconduct by eliciting and commenting on testimony that Petitioner was the target of the police investigation, Petitioner would not be entitled to habeas relief in light of the fact that the questions and comments were isolated, there was additional evidence of guilt, and the judge instructed the jurors that the lawyers' questions and arguments were not evidence (Tr. 12/2/09, pp. 169-70). *See Akins v. Warren*, 362 Fed. App'x. 508, 514 (6th Cir. 2010).

The Court will likewise reject Petitioner's related ineffective assistance of counsel claim. To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, a petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To

demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(*quoting Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle*, 271 F. 3d 239, 245 (6th Cir. 2001). Because the Court has already determined that the prosecutor's questions and argument did not deprive Petitioner of a fundamentally fair trial, Petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *Slagle*, 457 F. 3d at 528. Petitioner is not entitled to habeas relief on his third claim.

IV.

Before Petitioner may appeal this Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if a petitioner demonstrates that reasonable jurists would

find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Petitioner has not made a substantial showing of the denial of a constitutional right, and a certificate of appealability is not warranted in this case. Petitioner is not entitled to leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

V.

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition.

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus (ECF No. 1) is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED.**

It is further **ORDERED** that permission to proceed *in forma pauperis* on appeal is **DENIED.**

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: December 13, 2013

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 13, 2013.

s/Tracy A. Jacobs
TRACY A. JACOBS